D.S., b/n/f George M. Stahl and )
Debbie Lynn Stahl, GEORGE M. STAHL )
and DEBBIE LYNN STAHL, )
  Plaintiffs, )
             )
    v.        )   CAUSE NO.: 2:11-CV-431-PRC
             )
EAST PORTER COUNTY SCHOOL )
CORPORATION, PORTER TOWNSHIP )
SCHOOL CORPORATION, MORGAN )
TOWNSHIP MIDDLE/HIGH SCHOOL, )
and BOONE GROVE MIDDLE SCHOOL, )
  Defendants. )

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [DE 22], filed by

Defendants East Porter County School Corporation and Morgan Township Middle/High School

(jointly "Defendants") on January 31, 2013. For the reasons set forth below, the Court grants

Defendants' Motion for Summary Judgment.

## PROCEDURAL HISTORY

On October 24, 2011, Plaintiffs D.S., Debby Lynn Stahl ("Debbie"), and George M. Stahl

("George") filed a Complaint against Defendants East Porter County School Corporation, Morgan

Township Middle/High School, Boone Grove Middle School, and Porter Township School

Corporation in the Porter County, Indiana Superior Court. The allegations of the Complaint relevant

to the instant Motion for Summary Judgment are that, "[d]ue to the negligence of East Porter

[County School Corporation] and Morgan Township [Middle/High School] in failing to protect her

from known threats posed by staff and other students, [D.S.] has undergone pain, suffering,

emotional distress and interference in her access to public education, all in denial of her Civil and Constitutional Rights." Compl. ¶ 11. Also, Debbie and George allege that, "[d]ue to their being banned willfully and without cause from the grounds of East Porter [County School Corporation] property, and the police being willfully and without cause notified against them, George and Debbie have undergone pain, suffering, emotional distress and loss of reputation in their community." *Id.* ¶ 12.

On November 22, 2011, Defendants filed a Notice of Removal, and the case was subsequently removed to this Court. Defendants Boone Grove Middle School and Porter Township School Corporation filed an Answer to Plaintiffs' Complaint on December 12, 2011, and Defendants East Porter County School Corporation and Morgan Township Middle/High School filed an Answer to the Complaint on December 13, 2011.

On January 31, 2013, East Porter County School Corporation and Morgan Township Middle/High School filed the instant Motion for Summary Judgment accompanied by a brief in support and an appendix of exhibits. On February 11, 2013, Plaintiffs filed a response brief. Subsequently, on February 25, 2013, Defendants East Porter County School Corporation and Morgan Township Middle/High School filed a reply.

The parties orally consented to having this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts

to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-11 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## FACTUAL BACKGROUND

Minor Plaintiff D.S. was enrolled in East Porter County School Corporation from kindergarten until eighth grade. D.S. asserts that she experienced incidents of bullying in school from the third grade to her eighth grade year, which ultimately culminated in an incident before and during a basketball game on February 9, 2011, after which her parents, Debbie and George, were banned from East Porter County School Corporation property. D.S. specified an incident during her third grade year at the elementary school, in which her teacher referred to her as a "chocoholic" in front of her class. Def. Mot. S.J., Ex. 1, 14:6-7. Additionally, D.S. testified that her classmates tripped, shoved, and called her names during the third grade. D.S. complained to the elementary school principal about these incidents, but D.S. does not know if the principal took any action in response to the complaints. D.S. asserts that, during the fifth grade, "no one was allowed to talk to [her]" because a group of girls in her class began teasing students that talked to D.S. *Id*. at 17:5-11. As a result, when D.S. sat down to eat lunch, everyone would move to another table, isolating her. During the fifth grade, students also continued to trip D.S. as she walked down the hallway. D.S. again discussed the incidents with the elementary school principal and identified the girls that were picking on her.

D.S. testified that, in sixth grade, at Morgan Township Middle/High School, she was forced to participate in gym class despite the fact that she broke three of her toes playing basketball during lunch one day. The Stahls contacted a doctor about the injury, and he directed them to tape her toes and have D.S. refrain from participating in gym. D.S. did not obtain a doctor's note. Debbie Stahl wrote a note to the gym teacher indicating that D.S. could not participate in gym. In response, the gym teacher informed D.S. that "it was [her] choice whether or not to participate, but if [she] didn't,

[she] would fail for the day." *Id.* at 27:1-3. D.S. did not want her grade affected, so she chose to participate. D.S. also gave a note to the assistant principal.

During the sixth grade, D.S. was involved with the basketball and volleyball teams at Morgan Township Middle/High School. She testified that, during basketball practices, the girls threw basketballs at her head, tripped her, and ignored her. D.S.'s sixth grade basketball coach put her into a game, took her out roughly one minute later, and subsequently accused D.S. of losing the game in front of the entire team. D.S. complained to the coach, who responded that D.S. was not good at basketball. In contrast, D.S. asserts that she was one of the best players on the team and that she did not receive playing time because the coach favored certain girls on the team over others. However, D.S. testified that she did not know why some girls were favored over her.

D.S. also received little playing time in basketball games during her seventh grade year. She discussed the lack of playing time with her seventh grade basketball coach, who indicated that D.S. was not a talented basketball player. As for volleyball, D.S.'s primary complaint is that her coach did not give her a lot of playing time and would not permit her to serve during games. In response to complaints regarding the lack of playing time, the volleyball coach asserted that D.S. was not good at volleyball. Additionally, D.S. explained that the volleyball coach accused her of failing to run the required number of laps at practice and subsequently lying about it. In seventh grade, somebody wrote on her school planner, "I hope you die." Def. Mot. S.J., Ex. 1, 41:13. D.S. showed it to her guidance counselor.

D.S. and three other girls were cut from the eighth grade volleyball team. The basketball team, on the other hand, did not have try outs; therefore, D.S. continued to be a player on the basketball team. During her eighth grade year, D.S. experienced more bullying incidents, such as

an instance in which a girl deliberately elbowed D.S. in the ribs at practice and subsequently bragged about doing so in school. Meanwhile, students continued to pick on D.S. in class. For example, students moved her desk and sometimes kicked her desk during her social studies class. D.S. testified that her social studies teacher laughed when her desk was moved. D.S. testified that she spoke to her guidance counselor during her eighth grade year and spoke to the principal once or twice.

On February 9, 2011, D.S. stayed after school with the rest of the eight-grade girls basketball team for a basketball game. When they were told to get their uniforms, D.S. went to the laundry room to pick up her basketball uniform. One of the alleged bullies told D.S. that D.S. had taken the wrong shorts and showed D.S. that she (the bully) had changed D.S.'s short size on the clipboard from large to extra large. Subsequently, some of D.S.'s team members began shoving her and calling her names, such as "fat." Def. Mot. S.J., Ex. 2, 64:17-22. D.S. attempted to escape the name calling by going to the computer lab, but the girls followed her to confront her again. D.S. complained to a faculty member and used the faculty member's telephone to call her mother. Debbie Stahl immediately left for the school. When she arrived at the school, D.S. informed her about what had just transpired that made her so upset. Debbie became upset and yelled at the alleged bullies, pointing her finger at one of them.

Subsequently, D.S.'s father, George Stahl, arrived at the school, went directly to the office, and spoke with Principal Mueller about the bullying situation. He asked her, "What is going on?" and "Why is - - - why are they treating my family this way?" Def. Mot. S.J., Ex. 3, 70:10-12. Principal Mueller did not answer. George told her that the girls had attacked D.S. and asked, "When is it going to stop?" *Id*. at 70:13-15. George asked when Principal Mueller was going to talk to the

girls, to which Principal Mueller responded that she was going to speak to Debbie Stahl about what she had done. George asked what Debbie had done, and Principal Mueller did not respond. He then asked, "Is this about money: Why is my kid being treated poorly?" *Id*. at 71:9-10. At one point, George took money out of his pocket, which fell on the floor, and said, "Is this about money? Why is my kid treated so poorly? Is this a money community? What's the problem? I have money, too." *Id.* at 71:21-24.

George left the school but then returned to get his father who was already in the gym for the basketball game. As George and his father were leaving the gym, some of the eighth grade girls got up and walked toward them and started laughing at them. George asked one girl in particular, "Why are you treating my daughter this way? She was a good friend of yours." *Id*. at 74:7-9. He also told her that she was "becoming one of . . . them." *Id.* at 74:14-15. As George and his father were walking out, the girls started yelling that George and his father had attacked them. One of their fathers was yelling, asking who had been "cussing" at his daughter. *Id*. at 75:2. As George and his father were leaving, Principal Mueller summoned George into her office, and shortly thereafter two police officers arrived. The assistant principal was also present. George and his father told the officers that they had done nothing, and no students came forward to complain. Then George and his father left. No citation was issued to George.

The following morning, Superintendent Roy Gardin contacted Debbie Stahl to discuss the previous day's incidents. Superintendent Gardin wanted to meet that afternoon with the Stahls, but Debbie explained that her husband was not available. During the conversation, Superintendent Gardin told her that she and George were banned from the East Porter County School Corporation property until they were able to meet. Debbie did not contact Superintendent Gardin to set up a

different appointment. Debbie and George were subsequently informed by letter that they were banned from school property for one year. D.S. was not banned from the school property but voluntarily chose not to return to Morgan Township Middle/High School.

Although D.S. asserts on several occasions in her deposition that she does not know if the administration took any steps in response to her complaints of bullying, D.S. testified that, during seventh grade, she witnessed the guidance counselor discussing the bullying issue with one of the alleged bullies and asking the bully why she was bullying D.S. In response, the girl asserted that she would "start being nicer to [D.S.]." Def. Mot. S.J., Ex. 1, 47:1-2. Similarly, during D.S.'s eighth grade year, D.S. witnessed the school principal calling one of the alleged bullies down to her office to discuss the bullying issue and stressing that the girls needed to get along.

## ANALYSIS

### A. Federal Claims

*1.      D.S.'s § 1983 Claims–Equal Protection and Substantive Due Process*

D.S. brings constitutional claims under 42 U.S.C. § 1983 for violations of her equal protection and due process rights. A cause of action may be brought under § 1983 against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must show that she "was deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). The Court considers each of her constitutional claims in turn.

a.      Equal Protection

"The Equal Protection Clause grants to all Americans 'the right to be free from invidious discrimination in statutory classifications and other governmental activity.'" *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)); *see also* U.S. Const. Amend. XIV, § 1.  A mere showing of negligence is insufficient to establish the requisite discrimination for an equal protection violation.  *See id.* at 454.  Rather, a plaintiff alleging a violation of her right to equal protection under the law must show that "the defendants acted either intentionally or with deliberate indifference," in other words, with a "nefarious discriminatory purpose."  *Id.* at 453, 454.

Traditionally, the Equal Protection Clause is understood to protect members of vulnerable groups from unequal treatment by the state.  *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010) (citing *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004)).  D.S. does not allege that she is a member of a protected class.  Rather, she contends that the facts of this case support a "class of one" equal protection claim.  The United States Supreme Court has held that the Equal Protection Clause "proscribes state action that irrationally singles out and targets an individual for discriminatory treatment as a so-called 'class-of-one.'"  *Id.* (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010); citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (asserting that the class-of-one "is not a garden-variety equal protection challenge" because "such challenges are 'typically . . . concerned with governmental classifications that affect some groups of citizens differently from others.'").

To establish a successful class-of-one equal protection claim, a plaintiff must show that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 at 564. "To be considered 'similarly situated,' the class-of-one challenger and [her] comparators must be '*prima facie* identical in all relevant respects or directly comparable . . . in all material respects.'" *Moore*, 543 F.3d at 896 (quoting *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005)); *see also Reget*, 959 F.3d at 695. Generally, whether individuals are similarly situated is a question of fact for the jury to decide; however, "a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) (citing *Harlen Assoc. v. Vill. of Mineola*, 237 F.3d 494, 499 n. 2 (2d Cir. 2001)).

In the case at bar, D.S. cannot meet the requirements for a class-of-one equal protection claim because she does not identify *any* similarly situated students whom Defendants treated differently than D.S., and the evidence of record does not reveal any such students. D.S. dedicates only one sentence of the three paragraphs of analysis in her response brief to her class-of-one claim, asserting generally that Defendants are not entitled to summary judgment because "the facts demonstrate a 'class of one' violation of her [D.S.]'s civil rights." Nor does D.S. identify any facts in her Statement of Genuine Issues related to a similarly situated individual. Notably, D.S. does not offer any evidence in support of her response brief; she cites only to pages of the depositions of D.S. and George Stahl attached to Defendants' Motion for Summary Judgment. The failure to identify any similarly situated student is fatal to D.S.'s equal protection claim. *See Family Worship Ctr. Pentecostal Church of Holiness, Inc. v. See*, NO. 09-C-94, 2013 WL 1573137, at *4 (E.D. Wis. Apr.

12, 2013) (finding that the plaintiff had failed to identify a similarly situated individual in support of a class of one claim).

Although D.S. did not receive as much playing time as some of the other girls on the basketball and volleyball teams and felt that other members were treated better than everyone else, there were several girls in addition to D.S. who also did not receive as much playing time. *See* Def. Mot. S.J., Ex. 1, 33:10-11; 38:16-19. Even if the Court were to find that D.S. was treated differently from the other players as to playing time, the coaches provided a rational reason for not giving D.S. as much playing time as some of the other girls—they did not feel that she was as talented as other members of her team. D.S. has not offered any evidence that she was irrationally singled out. Accordingly, D.S.'s equal protection claim cannot survive, and the Court grants Defendants' Motion for Summary Judgment as to D.S.'s equal protection claim.

b.    Substantive Due Process Claim

It appears that D.S. is asserting a substantive due process claim against East Porter County School Corporation and Morgan Township Middle/High School. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Due process contains a substantive and a procedural component. *See Bigby v. City of Chicago*, 766 F.2d 1053, 1058 (7th Cir. 1985). In either case, "the touchstone of due process is protection of the individual against arbitrary action of government." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). However, only the most egregious official conduct rises to the level of arbitrary in a constitutional sense for purposes of substantive

due process.  *See id.* at 846 (characterizing "the cognizable level of executive abuse of power as that which shocks the conscience").

In her response brief, D.S. argues that Defendants' conduct created or substantially contributed to the creation of a danger or rendered D.S. more vulnerable to a danger than she otherwise would have been.  She contends that she routinely informed teachers, administrators, and guidance counselors of bullying but nothing was done.  In contrast, Defendants maintain that they are entitled to summary judgment because (1) schools do not have a duty to protect students from other students; (2) there is no evidence that Defendants' actions created a danger or rendered D.S. more vulnerable to any alleged danger; and (3) Defendants' actions do not shock the conscience.[1]

Although the language of the Due Process Clause prevents the state from infringing on an individual's right to life, liberty, or property, it does not "impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 708 (7th Cir. 2002) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)).  "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195.  The Supreme Court emphasized in *DeShaney* that the Due Process Clause does not impose a duty on the state to affirmatively act to protect individuals from other private actors except in certain limited circumstances.  *See id.* at 198.  The Seventh Circuit Court of Appeals has

---

[1] In the Motion for Summary Judgment, Defendants assert that D.S.'s substantive due process claim cannot be premised on a right to be educated to a certain quality or on a denial of or interference with education.  D.S. does not respond to these arguments, nor does she assert either as a basis for this claim.  As noted by Defendants, the right to a public education is not a fundamental right.  *See Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 712 (7th Cir. 2002) (explaining that the right to an education is not a fundamental right (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-34 (1973))).  Regardless, D.S. was not denied access to public education.  Defendants did not suspend or expel D.S.  At all times relevant to this case, D.S. was permitted to attend school.

recognized that the affirmative duty arises when the state (1) has a special relationship with an individual; or (2) acts in a way that creates or substantially contributes to the creation of a danger or renders a citizen more vulnerable to a particular danger than she otherwise would have been, which is known as the "state-created danger" exception. *See Martin*, 295 F.3d at 708 (citing *Monfils v. Taylor,* 165 F.3d 511, 515 (7th Cir. 1998); *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993)). D.S. invokes only the state-created danger exception in her response brief.[2]

To establish the state-created danger exception, a plaintiff must show that (1) the state, by its affirmative acts, created or increased a danger the plaintiff was exposed to; (2) the state's failure to protect the individual from the danger was the proximate cause of the plaintiff's injury; and (3) the state's failure to protect the individual shocks the conscience. *See Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009); *see also Martin*, 295 F.3d at 711 (explaining that a plaintiff asserting the state-created danger exception must prove that the state actors (1) created a dangerous environment; (2) knew the environment was dangerous; and (3) "used their authority to create an opportunity that would not otherwise have existed for the third party's [acts] to occur." (quoting *Armijo v. Wagon Mount Pub. Sch.*, 159 F.3d 1253, 1263 (10th Cir. 1998)) (alteration in original)).

---

[2] D.S. does not argue that the special relationship exception is applicable in this case. Under the exception, a duty arises when the state has custody of an individual, depriving that individual of the ability to care for herself. *See Reed v. Gardner*, 986 F.2d 1122, 1124 (7th Cir. 1993). Although courts have recognized the special relationship exception with regard to prisoners and involuntarily committed mental patients, courts have repeatedly rejected the applicability of the special relationship exception to students in schools. *See, e.g., Martin*, 295 F.3d at 708 n.6 (citing cases in which various circuits have rejected the position that schools have a special custodial relationship with their students to satisfy the special relationship exception); *Nabozny v. Podlesny*, 92 F.3d 446, 459 (7th Cir. 1996) (relying on *DeShaney* to conclude that "school administrators do not have a 'special relationship' with students." (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *J.O. v. Alton Cmty. Unit. Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir. 1990) ("[T]he government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises."))); *see also Estelle v. Gamble*, 429 U.S. 97 (1976) (applying the special relationship exception to prisoners); *Alton Cmty.*, 909 F.2d at 272 (recognizing the special relationship exception for mental patients (citing *Youngberg v. Romeo*, 457 U.S. 307 (1982))).

D.S. has not offered evidence to create a genuine issue of material fact under this standard. D.S. contends that teachers and coaches instigated or contributed to the bullying she experienced. In doing so, D.S. cites to instances in which her desk was moved and her social studies teacher laughed about it. This is hardly sufficient to satisfy the creation or increase of danger element; however, even assuming that the first element is met, D.S.'s claim still falls short of satisfying the state-created danger exception for multiple reasons. D.S. asserts that she routinely informed teachers, administrators, and guidance counselors of bullying but that nothing was done; however, the record does not support D.S.'s contention. Rather, D.S. repeatedly testified in her deposition that she did not know if anything had been done in response to her complaints. Furthermore, D.S. specified an instance in which she witnessed the principal call one of the alleged bullies to her office to discuss the bullying situation. Similarly, D.S. witnessed the guidance counselor talking to one of the alleged bullies about her behavior toward D.S., and during that meeting, the bully agreed to be nicer to D.S. It appears that, if D.S. did not witness a response, she assumed that none occurred. However, those assumptions are insufficient to raise a genuine issue as to whether anything was done in response to her complaints to various school employees. Finally, D.S. cites to the incident in which she participated in gym with broken toes; however, she did not obtain a doctor's note to excuse her from class.

Moreover, even if the Court were to find that the first two elements were met for the state-created danger exception, D.S.'s claim would fail with regard to the third element. There is a lack of evidence from which a factfinder could conclude that Defendants' conduct was so egregious as to shock the conscience. Although the social studies teacher's laughter and the third grade teacher's reference to D.S. as a "chocoholic" may have been inappropriate, not all wrongs rise to the requisite

level of egregiousness to satisfy a due process claim. *See Smith ex rel. Smith v. Half Hollow Hils Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (finding that a teacher's actions were not sufficiently brutal and shocking to constitute a due process violation, even though the teacher slapped a student in the face with no pedagogical or disciplinary justification). Accordingly, the Court grants Defendant's Motion for Summary Judgment on D.S.'s substantive due process claim.

     c.    *Monell*

Even if D.S. could survive summary judgment on her equal protection and substantive due process claims, she cannot establish municipal liability for the § 1983 claims against East Porter County School Corporation and Morgan Township Middle/High School under the standard set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government is responsible under § 1983." *Id.* at 694. Therefore, to establish the liability of a municipality for a constitutional deprivation, a plaintiff must demonstrate:

> (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012) (quoting *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (quoting *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007)). "In cases asserting an implicit policy or a gap in express policy, 'what is needed is evidence that there is a true municipal policy at issue, not a random event.'" *Estate of Sims*, 506 F.3d at (quoting *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006) (citation omitted)).

In the present case, D.S. contends that she satisfies *Monell* by generally asserting that she has identified a "pattern and practice of abuse and mistreatment that is widespread and so permanent and well settled as to constitute a custom or usage with the force of law." Pl. Resp., p. 2. Specifically, D.S. argues that she was routinely bullied and mistreated by girls in her elementary and middle schools for five years, that Defendants were aware of the bullying, but that Defendants failed to do anything to stop it. There is no evidence in the record, however, that Defendants failed to take any action in response to D.S.'s complaints of bullying. In contrast, as noted above, D.S. identified instances in which the bullying students were confronted by the administration.

More importantly, D.S. fails to specify any widespread practice Defendants engage in to give rise to municipal liability under *Monell*. There is no admissible evidence that Defendants have a pattern and practice of refusing to respond to claims of bullying or of permitting teachers to bully students. D.S.'s restatement of the standard from *Monell*, without anything more, is insufficient to raise a genuine issue for trial. Consequently, any constitutional claim by D.S. against the Defendants must fail, and the Court grants summary judgment in favor of Defendants on D.S.'s constitutional claims brought under § 1983 on this additional basis.

2.    *Debbie and George Stahl's § 1983 Due Process Claim*

Debbie and George do not identify the federal claim they bring on their own behalf either in their Complaint or by citation to any law in their response brief. In their Complaint, Debbie and George allege that, "[d]ue to their being banned willfully and without cause from the grounds of East Porter [County School Corporation] property, and the police being willfully and without cause notified against them, George and Debbie have undergone pain, suffering, emotional distress and loss of reputation in their community." Compl. ¶ 12. In the Motion for Summary Judgment,

Defendants note that there is no constitutional right for the public to access school property, that the school had a justified and rational basis for banning Debbie and George from the school premises for a year, and that Debbie and George cannot produce evidence to support a "stigma plus" due process claim. In their Response Brief, Debbie and George assert in both their Statement of Material Facts and their one paragraph argument on this issue that "Defendants['] decision to ban Plaintiffs George Stahl and Debbie Stahl from the school premises was arbitrary and caprcious[sic]." Compl., p. 2. In their brief, Debbie and George argue that the decision to remove them from the school premises was arbitrary and capricious because there is a genuine issue of material fact as to whether Debbie and George engaged in aggressive conduct on February 9, 2011. Thus, it appears that George and Debbie may be pursuing a federal due process claim.

"Before a party may assert a due process argument–procedural or substantive–it must establish that it has a 'legitimate claim of entitlement' to the right being asserted." *New Burnham Prairie Homes, Inc. v. Vill. of Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Therefore, in the absence of an identified life, liberty, or property interest, Debbie and George cannot successfully maintain a due process claim for an alleged arbitrary and capricious action. In the present case, Debbie and George have failed to specify any life, liberty, or property interest of which they were deprived as a result of Defendants' alleged arbitrary and capricious decision to remove them from school premises. Nor does the record reveal any such interest sufficient to satisfy a due process claim.

To the extent that Debbie and George are attempting to establish a "stigma plus" due process claim, they cannot satisfy the requirements of such a claim with the admissible evidence of record. "A plaintiff may prove a deprivation of a protected liberty interest by showing damage to his 'good

name, reputation, honor, or integrity.'" *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 753 (7th Cir. 2012) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).  However, "any stigmatic harm must take concrete forms and extend beyond mere reputational interests." *Omosegbon v. Wells*, 335 F.3d 668, 675 (7th Cir. 2003) (citing *Paul v. Davis*, 424 U.S. 693, 711-12 (1976)).  The "plus" prong of a stigma plus claim requires an alteration of the individual's legal status as a result of the stigma.  *See Brown v. City of Mich. City, Ind.*, 462 F.3d 720, 730 (7th Cir. 2006) (explaining that the plus element of a stigma plus claim requires the alteration of a legal right or status previously recognized by law).

Although Debbie and George claim that their reputations have been harmed as a result of the one-year ban imposed by the school, they do not allege that the school district publicized the ban or that they have been harassed due to publication of the ban; nor is there any evidence in the record that Defendants publicized the one-year ban imposed on Debbie and George.  Therefore, Debbie and George fail to satisfy the first requirement of a stigma plus claim–the stigma.  Even if Debbie and George could establish the "stigma," they cannot satisfy the "plus" requirement because there is no evidence that Debbie and George have experienced an alteration of their legal statuses.  Debbie and George did not have a constitutional right to enter school property in the first place; therefore, the ban has not altered their legal statuses.  *See Hannemann*, 673 F.3d at 755 ("[T]he public has no constitutional right to access schools." (citing *Vukadinovich v. Bd. of Sch. Trs. of Michigan City Area Schools*, 978 F.2d 403, 407 (7th Cir. 1992)).  Consequently, Plaintiffs are unable to establish a stigma plus claim to withstand Defendants' Motion for Summary Judgment.

Even if Debbie and George could establish a legitimate claim of entitlement, Debbie and George cannot show that Defendants' decision to ban them from the school premises was arbitrary

and capricious. Defendants have provided rational reasons for the decision, and those reasons are supported by the record. Debbie testified in her deposition that she confronted several of the alleged bullies, yelling and pointing her finger at them. George testified in his Deposition that, while speaking to Principal Mueller, he made statements such as, "[w]hy is my kid treated so poorly," "[i]s this about money," "[i]s this a money community," and "I have money, too," while simultaneously pulling money out of his pocket. Def. Mot. S.J., Ex. 4, 71:21-25; 72:7-11. Additionally, George testified that, while leaving the basketball game that same evening, he had an exchange with some of the alleged bullies, asking one in particular why she was treating his daughter poorly and accusing the girl of "becoming one of . . . them." Def. Mot. S.J., Ex. 4, 74:6-15. Although George claims he did not raise his voice or swear, the young lady told her father that George swore at her, so her father became upset. In response, Principal Mueller called the police and summoned George into her office to await the officers' arrival. Subsequently, Superintendent Gardin attempted to set up a meeting with Debbie and George to discuss what had occurred on February 9, 2011; however, Debbie and George did not meet with him. Debbie and George do not offer any evidence of any other motive for the ban from the school property. Under all the circumstances, the decision to ban Debbie and George for one year was not arbitrary and capricious.

Accordingly, Debbie and George's federal due process claims fail as a matter of law, and the Court grants summary judgment in favor of Defendants on Debbie and George's federal constitutional claims.

### B. State Law Claims

The Court has now granted summary judgment in favor of Defendants on all of Plaintiffs' federal claims, and the parties are not diverse; therefore, the Court has dismissed all claims over

which it has original jurisdiction. When a district court has only supplemental jurisdiction over remaining state claims, it may decline to exercise its jurisdiction over those claims if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]he presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims" when the federal claims are dismissed before trial. *Al's Serv. Ctr. v. BP Products N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). A district court should exercise its discretion to relinquish jurisdiction over supplemental state law claims remaining after the dismissal of federal claims subject to three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008). In this case, it is "clearly apparent" how the state claims are to be decided; thus, the Court, in its discretion, retains jurisdiction over the state law claims.

In this case, Plaintiffs have abandoned their Indiana state law claims of intentional infliction of emotional distress, defamation, and false light invasion of privacy. Neither D.S. nor Debbie and George have offered any response to Defendants' Motion for Summary Judgment on each of the state law claims. It is well established that when a party fails to respond to an issue raised in a summary judgment motion, the issue is deemed abandoned and waived. *See, e.g., Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned); *Laborers Int'l Union of North America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating arguments not presented to the court in response to a summary judgment motion are waived). Accordingly, summary judgment in favor of

Defendants on D.S.'s and Debbie and George's state law claims is proper. *See Swaner v. Barbieri*, No. 1:10-CV-928, 2013 WL 1294485, at *4 (S.D. Ind. Mar. 28, 2013).

Even if the Court were to consider the merits of the summary judgment motion on the state law claims, the outcome would also be "clearly apparent" because Plaintiffs have not offered any facts to create a genuine issue of material fact for trial on the claims. The tort of intentional infliction of emotional distress ("IIED") arises when an individual "by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . . ." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991) (quoting Restatement (Second) of Torts § 46 (1965)). "It is the intent to harm the plaintiff emotionally which constitutes the basis for the tort." *Johnson ex rel. Ind. Dep't of Child Servs. v. Marion Cnty. Coroner's Office*, 971 N.E.2d 151, 162 (Ind. Ct. App. 2012) (citing *Cullison*, 570 N.E.2d at 31). The tort of intentional infliction of emotional distress occurs when the defendant (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another. *Id.* (citing *Cullison*, 570 N.E.2d at 31). The requirements to prove this tort are rigorous. *Id.* (citing *Cullison*, 570 N.E.2d at 31).

D.S. claims in the Complaint that she suffered emotional distress due to Defendants' failure to protect her from threats posed by students and faculty at Morgan Township Middle/High School. However, there is no conduct on Defendants' part that rises to the requisite level of outrageousness. While the Court recognizes that D.S. unfortunately experienced bullying from other girls in her school, Defendants' alleged failure to protect D.S. from bullying was not extreme and outrageous, especially when, as discussed above, they did not have a duty to protect D.S. in the first place and the principal and the guidance counselor did speak to the bullies on certain occasions. Nor does the remark by the third grade teacher that she was a "chocoholic" rise to the requisite level of

22

outrageousness. Similarly, the coaches' refusal to give D.S. more playing time is not so unreasonable and extreme given that the coach felt D.S. was less talented than other players. Thus, the grant of summary judgment in favor of Defendants on D.S.'s IIED claim is proper.

Similarly, Debbie and George have failed to identify any evidence of behavior by the school or the district that constitutes outrageous behavior. They allege in the Complaint that they have suffered emotional distress as a result of the one-year ban from the school grounds. As discussed above, the superintendent had a rational basis for imposing the ban. Notably, Defendants did not publicize the ban or attempt to use other means to embarrass or harm Debbie and George. Plaintiffs also have not offered any evidence of damages. Therefore, the Court grants summary judgment in favor of Defendants on Debbie and George's IIED claim.

To the extent Debbie and George may be alleging claims of defamation or false light invasion of privacy by their allegation in the Complaint that they have "undergone . . . loss of reputation in their community," Compl. ¶ 12, both claims must fail. Debbie and George have not offered any evidence of a false statement made by Defendants or that any such false statement was published, both of which are necessary elements of a claim of either defamation or false light invasion of privacy. *See In re Ind. Newspapers, Inc. v. Junior Achievement of Cent. Ind., Inc.*, 963 N.E.2d 534, 549 (Ind. Ct. App. 2012) (defamation); *St. John v. Town of Elletsville*, 46 F. Supp.2d 834, 850-51 (S.D. Ind. 1999) ("false light" invasion of privacy) (citing *Furno v. Citizens Ins. Co. of Am.*, 590 N.E.2d 1137, 1141 (Ind. Ct. App. 1992); *Near East Side Cmty. Org. v. Hair*, 555 N.E.2d 1324, 1335 (Ind. Ct. App. 1990)). Thus, summary judgment in favor of Defendants on Debbie and George's state law defamation and false light invasion of privacy claims is granted.

**CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motions for Summary Judgment [DE 22]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendants East Porter County School Corporation and Morgan Township Middle/High School and to enter judgment against Plaintiffs D.S., Debbie Stahl, and George Stahl.

SO ORDERED this 29th day of April, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record